**CHICAGO, R. I. & P. R. CO.**
v.
**DOBRY FLOUR MILLS, Inc.**
No. 4706.

United States Court of Appeals
Tenth Circuit.
April 6, 1954.

Rehearing Denied May 12, 1954.

Nell Rhodes Fisher, Oklahoma City, Okl. (J. I. Gibson, Oklahoma City, Okl., was with her on the brief), for appellant.

Duke Duvall, Oklahoma City, Okl. (Paul Dudley and Dudley, Duvall & Dudley, Oklahoma City, of counsel), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff railroad company constructed a spur track from its main line to serve a flour mill belonging to the defendant located in Canadian County, Oklahoma.[1] A spur track agreement was entered into which contained the following provisions:

"The Industry also agrees to indemnify and hold harmless the Trustees for loss, damage or injury from any act or omission of the Industry, its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation, while on or about said track, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."[2]

An employee of the Railroad was injured on Dobry's property while performing his duties. The Railroad settled with the injured employee and brought this action to recover the amount paid in the settlement. The case was submitted to a jury on special issues which resulted in a judgment for Dobry.

On May 26, 1950, the Railroad, at the request of Dobry, was performing certain freight train switching movements on the spur track. Engaged in such movements was Paul Fruit, a switchman in the employ of the Railroad. As part of its milling facilities, Dobry had constructed and maintained between two side tracks a wooden loading dock about two hundred feet long, six feet wide and four and one-half feet high. In the switching operations, Fruit was required to be upon the platform which was covered with an accumulation of flour dust from the Dobry mill. Rain was falling, and it caused the dusty platform to become very slippery. Fruit slipped and fell and suffered personal injuries.

Fruit advised the Railroad that he was totally and permanently disabled as a result of his fall. He claimed that his disability was a direct and proximate result of the negligent maintenance of the platform and that under the provisions of the Federal Employers' Liability Act the Railroad was liable to him for its failure to furnish him with a safe place to work. 45 U.S.C.A. § 51 et seq. After an investigation, the Railroad concluded that it was liable to Fruit and discussed the matter with representatives of Dobry. Numerous conferences were held concerning liability in the matter. Dobry denied any responsibility under the indemnity contract. On July 5, 1951, the Railroad wrote a letter to Dobry and notified it of Fruit's claims and demanded that it assume the defense of the same and hold the Railroad harmless. Dobry was also advised that if it refused the demand, the Railroad would make settlement with Fruit and seek recovery from Dobry of the amount paid. Dobry disclaimed then, as it does now, that it was liable under the indemnity contract.

The Railroad settled the claim and brought this action in which it alleged substantially the above facts. Dobry

1. The parties will be referred to herein as "Railroad" and "Dobry".

2. Dobry was referred to in this agreement as the "Industry". At the time the instrument was executed, the Railroad was under reorganization pursuant to Chapter 8 of the Bankruptcy Act, 11 U.S.C.A. § 205, and was in charge of trustees.

answered and admitted the existence of the indemnity contract and the demands of the Railroad, but denied any liability on its part. The answer alleged that the settlement was unreasonable and that the Railroad was not legally liable to pay Fruit any amount. As further defenses, Dobry alleged that its liability was not controlled by the Federal Employers' Liability Act; that Fruit was guilty of contributory negligence, and that the condition and construction of the premises were known to Fruit so that he assumed the risk thereof when he entered upon them.

The court instructed the jury that the Railroad's liability to Fruit was controlled by the Federal Employers' Liability Act; that the Railroad was bound to furnish Fruit with a safe place to work; and that contributory negligence on the part of Fruit or the doctrine of assumption of risk was not a defense. As to the liability of Dobry, the jury was instructed that Fruit "as an invitee, assumed all normal or ordinary risk attendant upon the use of the premises and that Dobry was under no duty to alter known or obvious dangers. However, if you should find that a dangerous condition existed which was neither known or obvious, and that Dobry either knew of this danger, or by the exercise of reasonable diligence, could have known, then Dobry would be guilty of negligence." The jury was also instructed that if Fruit was found to be guilty of contributory negligence, the answer to the interrogatory as to whether Fruit was guilty of negligence and whether his negligence was the proximate cause of his injury should be yes.[3]

With respect to the interrogatory relating to the good faith of the Railroad in making the settlement, the jury was instructed that if it found that the Railroad "acted reasonably and in good faith in determining that it was legally liable unto Paul Fruit for damages or that there was danger or probability that a suit would result in a recovery for damages, then Rock Island was entitled to settle with Paul Fruit for such sum as it reasonably and prudently and in good faith believed compensated Paul Fruit for such injuries as he had sustained, or such sum as Rock Island believed necessary to avoid litigation * * * so long as the amount was reasonable, * * *." Acting upon these instructions, the jury found that the Railroad was not negligent; that Dobry was not negligent; that Fruit was not guilty of contributory negligence; that the Railroad had acted reasonably and in good faith in determining the amount of fair and just compensation to Fruit; and, finally, that Fruit had suffered damages of $20,445.00, the amount of the settlement. The trial court was of the view that even though the Railroad had made a good faith settlement, it still had to prove that it was legally liable to Fruit. In other words, in addition to making a good faith settlement, the trial court placed upon the Railroad the burden of proving its own negligence and submitted this question to the jury. The trial court was also of the view that Dobry's liability to the Railroad depended upon its liability to Fruit under the common law rules of negligence.

██ Ordinarily, to sustain a claim upon an indemnity contract such as we have here, it is necessary for the indemnitee to prove legal liability to the injured party. McPheters v. Loomis, 125 Conn. 526, 7 A.2d 437; Oregon-Washington R. & N. Co. v. Washington Tire & Rubber Co., 126 Wash. 565, 219 P. 9; Missouri-Pacific Railway Co. v. Sonken-Galamba Corp., 220 Mo.App. 462, 274 S.W. 930; Tidewater Coal Exchange, Inc., v. Amer. Surety Co., 4 W.W.Harr., Del., 41, 143 A. 34; Annotations: 3 Ann.Cases 480; 20 A.L.R.2d 726. How-

3. The following interrogatory was submitted to the jury:

"(3) Do you find that Paul Fruit was guilty of negligence and that such negligence was a proximate cause of his own injury?

Answer: No."

ever, in Oklahoma and elsewhere in indemnity cases, where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage. 15 Okl.St.Ann. § 427; Traders & General Insurance Co. v. Rudco Oil & Gas, 10 Cir., 129 F.2d 621, 142 A.L.R. 799; Thermopolis Northwest Electric Co. v. Ireland, 10 Cir., 119 F. 2d 409; Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W.2d 1055; Parker v. Stewart, 296 Ky. 48, 176 S.W.2d 88; United States Fidelity & Guaranty Co. v. Hooper, 219 Wis. 373, 263 N.W. 184; New Orleans Great Northern R. Co. v. S. T. Alcus & Co., 159 La. 36, 105 So. 91.[4] A contrary rule would make the right to settle meaningless in cases where the indemnitor has denied liability. On this subject, the only question which should have been submitted to the jury was whether the Railroad made a reasonable, prudent and good faith compromise and settlement. In determining whether the settlement was made in good faith, the jury should consider the likelihood of a recovery by Fruit against the Railroad and the reasonableness of the amount of the settlement, but a prior judicial determination of either question is not necessary. Minton v. American Surety Co. of New York, 184 Okl. 602, 88 P.2d 883; Anderson v. Reed, 133 Okl. 23, 270 P. 854.

■ The Railroad's action is not predicated upon the general law of torts but upon an indemnity contract. Therefore, the liability of Dobry to the Railroad is not to be determined from its primary liability to Fruit but from its obligations as created by the contract. Booth-Kelly Lumber Co. v. Southern Pac. Co., 9 Cir., 183 F.2d 902, 20 A.L.R.2d 695; Cacey v. Virginian Ry. Co., 4 Cir., 85 F.2d 976; Deep Vein Coal Co. v. Chicago & E. I. Railway Co., 7 Cir., 71 F.2d 963; Luton Mining Co. v. Louisville & N. R. Co., supra; New Orleans Great Northern R. Co. v. S. T. Alcus & Co., supra; National Transit Co. v. Davis, 3 Cir., 6 F.2d 729; Terminal R. Ass'n of St. Louis v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693; Annotation 20 A.L.R.2d 711.

■ We construe the "acts or omissions" referred to in the indemnity clause of the contract to mean the wrongful or negligent acts by Dobry which would create liability on the part of the Railroad. Consequently, under the provisions of the contract Dobry's liability is to be determined under the law which would make the Railroad liable to Fruit, and not upon Dobry's common law liability, and the matter should have been submitted to the jury accordingly.

Judgment is reversed and the case remanded for a new trial.

---

**4.** In the Thermopolis Northwest Electric Co. v. Ireland case, this court said [119 F.2d 412]:

"It is further contended that in any event the resolution covered only legal losses, meaning payments made under legal compulsion; that the sum paid in compromise and settlement of the Cuff suit was voluntarily paid; and that it was paid without notice to the defendant. A sum paid in a prudent settlement of a suit made in good faith is paid under compulsion, within the meaning of an indemnity against losses of the kind asserted in the action. St. Louis [Dressed] Beef Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712. The company had disclaimed any responsibility to defend the suit, and that constituted a repudiation of its obligation of indemnity. The executrix was authorized to make a reasonable, prudent, and good-faith compromise and settlement, without notice to the company. Hardware Mut. Casualty Co. v. Hilderbrandt, 10 Cir., 119 F.2d 291, decided January 13, 1941."