MISSOURI PACIFIC RAILROAD COMPANY, Appellee,

v.

ARKANSAS OAK FLOORING COMPANY, Appellant.

MISSOURI PACIFIC RAILROAD COMPANY, Appellant,

v.

ARKANSAS OAK FLOORING COMPANY, Appellee.

Nos. 19932, 19943.

United States Court of Appeals, Eighth Circuit.

Nov. 12, 1970.

W. A. Eldredge, Jr., Little Rock, Ark., for Missouri Pacific R. Co.

Robert S. Linsey, Little Rock, Ark., for Arkansas Oak Flooring Co.

Before VOGEL, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

In this diversity case governed by Arkansas law, we are called upon to revisit circumstances similar to those before this court in Anthony v. Louisiana & Arkansas Railway Company, 316 F.2d 858 (8th Cir.), cert. denied 375 U.S. 830, 84 S.Ct. 74, 11 L.Ed.2d 61 (1963). As in *Anthony*, a railroad brakeman riding outside a freight car on a spur track struck his head against a loading dock constructed and maintained by an Arkansas lumber company. In both cases,

the brakeman sustained severe personal injuries, here loss of an arm when he fell to the ground and rolled under a moving railroad car. In both cases, an agreement between the railroad and the lumber company required a clearance between the track and the dock greater than actually existed. In each case, the brakeman asserted a claim for damages against the railroad under the Federal Employees' Liability Act (FELA) and the railroad avoided litigation by settling out-of-court.

As in *Anthony*, here the railroad-appellee (Missouri Pacific) sought full indemnity from the lumber company-appellant (Oak Flooring) for the amount of the settlement. Basing its decision on *Anthony*, the federal district court, upon receiving a special verdict,[1] granted the railroad full indemnity. Oak Flooring appeals from the judgment, contending that the district court failed to consider certain issues, the resolution of which could have barred or reduced the amount of Missouri Pacific's indemnity claim.

We first consider appellant's principal claim that the district court erred in rejecting as immaterial evidence which tended to show acquiescence by the railroad in the continuation of the obstructed clearance between the track and the loading dock. Since in *Anthony* this court rejected the defense of acquiescence urged by the lumber company as a bar to indemnity, we examine and compare the pertinent provisions of the agreement in *Anthony* with those present here.

In *Anthony*, the lumber company agreed to refrain from placing or keeping any obstruction within eight and one-half feet of the center-line of the track adjacent to its premises. 316 F.2d at 862. Similarly, here Oak Flooring, incident to a lease of railroad property located adjacent to a spur track, agreed to refrain from "the erection or maintenance of any obstruction * * * at a distance less than eight and one-half feet from the center-line, of any track located on or adjacent to Premises * * *."

In *Anthony*, the railroad obtained a covenant from the lumber company, as shipper, to indemnify and hold harmless the carrier "from loss, damage or injury from any act or omission of Shipper * * * to the person or property of the parties hereto and their employees and to the persons or property of any other person or corporation, while on or about Switch. * * *" 316 F.2d at 863. Here, Oak Flooring, as "Lessee", undertook "to indemnify and hold harmless the Carrier against any sums which Carrier may be required to pay in the way of damages * * * and other expenses by reason of Lessee's failure to observe the clearances as herein provided." In a second indemnity clause, Oak Flooring agreed "to save and keep harmless the Carrier from all claims growing out of any default of Lessee", and in a third, "to indemnify and hold harmless Carrier against all claims * * * arising out of injury to * * * any person, * * * while on or about Premises, when such injury * * * results from any act or omission of Lessee * * *."

1. The jury affirmatively answered the following three interrogatories:

"Interrogatory No. 1—Do you find from a preponderance of the evidence that the violation of paragraph 3 of the Lease was a proximate cause of Mr. Gilliland's fall and injuries?

Interrogatory No. 2—Do you find from a preponderance of the evidence that the settlement by the Missouri Pacific with Mr. Gilliland was a reasonable, prudent and good faith compromise and settlement?

Interrogatory No. 3—Do you find from a preponderance of the evidence that a part of the $96,500.00 paid by the Missouri Pacific to Mr. Gilliland, in settlement of his claim, was paid in consideration for Mr. Gilliland's agreement not to seek further employment by the Missouri Pacific?"

As a part of Interrogatory No. 3, the jury also found that the railroad paid the injured brakeman $16,000.00 of the total settlement for relinquishment of the latter's re-employment rights.

One substantial difference exists between the two agreements under comparison. In *Anthony*, the lumber company specifically agreed, as part of its obligation to keep the track area clear of obstruction that:

> Carrier's knowledge of such obstructions and its continued operation on Switch shall not be a waiver of this covenant, nor of Carrier's right to recover for such damages to persons or property as may result therefrom.
> [316 F.2d at 862–863.]

No similar non-waiver provision was agreed to by Oak Flooring in this case.

In view of this difference, we now consider Oak Flooring's offer to prove at trial, through an exchange of letters between the parties,[2] that the railroad had acquiesced in the encroachment of the loading dock upon the area near the track which, according to the agreement, was to be left unobstructed. The district court ruled this evidence inadmissible. We disagree with this ruling.

The doctrine of acquiescence as a defense to a claim for indemnity deserves our brief comment. The Restatement of Restitution provides:

§ 76. General Rule.

A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

§ 95. Person Responsible for a Dangerous Condition.

Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other

---

2. On May 20, 1960, Missouri Pacific wrote Oak Flooring as follows:

> "Your company has a lease and loading dock on our tracks and right-of-way at Batesville, Arkansas covered by Agreement No. LA–17935, dated July 25, 1950.
>
> In the interest of Safety to our employees we recently made a survey of close clearances of buildings, docks, etc., to our tracks. Some time during 1959 you have constructed a roof or cover over your loading dock at Batesville which is in violation of the clearance requirements of the Arkansas Public Service Commission, as well as the lease agreement.
>
> We have advised your people at Batesville several times in the past three months and requested that the clearance be adjusted. To date nothing has been done.
>
> We shall appreciate, very much, if you will arrange to correct the close clearance at once inasmuch as the situation is a hazard and violation of the Public Service Commission.
>
> Our forces at Batesville will cooperate with you to accomplish this work."

The president of Oak Flooring responded to the railroad superintendent on May 27, 1960, as follows:

> "I have your letter of May 20th written from Nevada, Missouri. with reference to our loading dock at Batesville, Arkansas.
>
> You stated in your letter that sometime during 1959 we constructed a roof or cover over our loading dock at Batesville which is a violation of the clearance requirements. The information you received regarding the dock apparently is erroneous inasmuch as the structure of the dock is the same as it has been since April of 1950. We did repair the dock and foundations under the dock during 1959, but there was no change made in the upper structure.
>
> We inspect lumber on this dock for shipment to Pine Bluff over your railroad and it is necessary for the inspector to have a cover above to permit him to load during inclement weather.
>
> We would like very much to cooperate with you but inasmuch as the structure has been there for the period of time that it has, we do not see any reason for controversy at this time. The change you suggest would handicap us a great extent in loading and we do not believe that the clearance is any different on that dock than it is on the dock at our plant here in Pine Bluff and in many other areas on your railroad."

Neither party offered any other correspondence.

or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

In *Anthony*, we recognized these rules as governing the obligations of parties to an Arkansas indemnity contract, but we held the rule of acquiescence to be inapplicable in that case because the parties had evidenced an agreement by the above-quoted non-waiver clause that "such indemnity be operative despite the fact that the railroad continued to use the tracks with knowledge of the obstruction." 316 F.2d at 865.

Here, Missouri Pacific relies on two clauses in the agreement to establish a non-waiver intent as in *Anthony*, referring specifically to paragraph 3(b), which provides that Oak Flooring agrees "to waive all right to question the validity of this lease or any of the terms or provisions hereof, or the right or power of the Carrier to execute and enforce the same", and paragraph 4, which provides in part that: "Carrier or Lessee may waive any default at any time of the other without affecting, or impairing any right arising from any subsequent default."

■ The district court construed paragraph 3(b) as equivalent in operative effect to the specific non-waiver provision present in *Anthony*. We reject such broad construction as unjustified. Read literally, paragraph 3(b) refers only to the legality of the agreement and the powers of Missouri Pacific to execute and enforce its provisions. The defense of acquiescence, on the other hand, rests for its vitality on misconduct by the party seeking indemnification.

■ The generally recognized rule is that an indemnity agreement should not be construed to permit the indemnitee to recover for its own negligence "unless the court is firmly convinced that such an interpretation reflects the intention of the parties." United States v. Seckinger, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970). The Supreme Court of Arkansas recently stated:

> The intention of * * * [the indemnitor] to so obligate itself must be expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed. [Paul Hardeman, Inc. v. J. I. Hass Company, 439 S.W.2d 281, 285 (Ark.1969).]

■ We cannot conclude that paragraph 3(b) expresses with any degree of clarity an intent by Oak Flooring to indemnify Missouri Pacific for the latter's negligent conduct amounting to acquiescence. We feel this construction is in accord with the general policy, followed in Arkansas, that in case of doubt or ambiguity, a contract is to be construed against the party who prepared it, in this case Missouri Pacific. Arkansas Power & Light Co. v. Murry, 331 S.W.2d 98, 100 (Ark.1960).

The language of paragraph 4 likewise affords Missouri Pacific no comfort. In *Anthony*, this court characterized a nearly identical provision as affording "little additional aid in the construction problem." 316 F.2d at 866.

■ In *Anthony*, the railroad and the lumber company contracted against the doctrine of acquiescence as a defense to indemnity. In this case, they did not. This difference in the terms of the agreement dictates a difference in results. We therefore hold that acquiescence, if established by the evidence, will constitute a defense to Missouri Pacific's claim for full idemnity. In *Anthony*, we warned that the provisions of this type of contract vary considerably and that "[t]he phraseology used has an important bearing upon the construction of the contract including the indemnity provisions." 316 F.2d at 864. The rationale of *Anthony*, although not its precise holding supports our determination.

The Third Circuit, in Pennsylvania Railroad v. Erie Avenue Warehouse Co., 302 F.2d 843 (3d Cir. 1962), a case in-

volving circumstances including contract clauses very similar to those present here, applied the defense of acquiescence to bar the railroad's claim for full indemnity. The court said:

> We think the conclusion is required by the present record that the railroad had been adequately altered to the dangerous condition which caused this accident long before the mishap occurred. Yet, it is not disputed that the railroad neither took any corrective action itself nor called upon Erie to do so.
>
> \* \* \* \* \* \*
>
> In these circumstances, we think the evidence compels the conclusion that the conduct of the railroad with reference to a special risk to which it had been alerted was so blameworthy that acquiescence must be deemed to bar full indemnity. [302 F.2d at 849.]

*See* Pennsylvania Railroad Co. v. M. K. W. Corporation, 301 F.Supp. 991, 995 (N.D.Ohio 1969); Lehigh Valley Railroad Co. v. American Smelting and Refin. Co., 256 F.Supp. 534, 537 (E.D.Pa. 1966); Epley v. S. Patti Construction Company, 228 F.Supp. 1, 4–5 (N.D.Iowa 1964), rev'd on other grounds sub nom. Carstens Plumbing & Heating Company v. Epley, 342 F.2d 830 (8th Cir. 1965).

■ Appellant contends that the district court also erred in excluding evidence bearing on the likelihood that Missouri Pacific could have successfully defended a suit by the brakeman. Appellant asserts that such evidence is required for a proper determination of the reasonableness of the amount paid by Missouri Pacific in settlement of the brakeman's claim. We find this contention to be without merit. In seeking indemnity, the indemnitee need not prove its legal liability to the injured party when its indemnitor denies liability under a contract and refuses to assume defense of the claim or to otherwise hold the indemnitee harmless for any loss. Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, 211 F.2d 785, 787–88 (10th Cir.), cert. denied, 348 U.S. 832, 75 S.Ct.

55, 99 L.Ed. 656 (1954). Here, the record clearly shows potential liability of Missouri Pacific as a matter of law. The jury specifically found that Missouri Pacific made a good faith settlement of its potential liability. We deem this finding sufficient on the liability issue. Chicago, Rock Island & Pacific Ry. Co. v. United States, 220 F.2d 939, 941 (7th Cir. 1955). *See* Tankrederiet Gefion A/S y. Hyman-Michaels Company, 406 F.2d 1039, 1043 (6th Cir. 1969); Damanti v. A/S Inger, 314 F.2d 395, 397–398 (2d Cir.), cert. denied sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963); Hankinson v. Pennsylvania Railroad Company, 280 F.2d 249, 252 (3d Cir. 1960).

■■ Appellant also urges that the district court erred in not permitting the jury to reduce the indemnity award in proportion to Missouri Pacific's share of the negligence proximately causing the brakeman's injuries. Arkansas law permits such apportionment under indemnity clauses in which the indemnitor agrees to hold the indemnitee harmless for loss or damage arising from the indemnitor's negligent conduct. C & L Rural Electric Cooperative Corp. v. Kincaid, 256 S.W.2d 337 (Ark.1953), on appeal from remand, Kincade v. C & L Rural Electric Cooperative Corp., 299 S.W. 2d 67 (Ark.1957). *See also* Williams v. Midland Constructors, 221 F.Supp. 400 (E.D.Ark.1963); Harmon v. Robberson Steel Company, 157 F.Supp. 627 (W.D. Ark.1958). We differentiate an agreement to indemnify for damages which result from indemnitor's negligent conduct and an agreement providing indemnity for damages which result from the indemnitor's failure to perform a specific contractual obligation, here the obligation to refrain from obstructing the track area. One clause speaking in terms of tort liability requires application of tort concepts, the other speaking in terms of performance of a promise requires application of contract principles. For illustrations of other specific contract provisions, the breach of which

initiates an obligation on the part of the indemnitor to fully indemnify the railroad indemnitee, see *Anthony, supra,* 316 F.2d 858; Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. Co., 199 F.2d 725 (8th Cir. 1952). We agree with the district court's determination that the indemnity clause, if applicable in this case, permits no apportionment of damages pursuant to Arkansas negligence law.

Should, however, further proceedings establish the defense of acquiescence, the district court must consider the effect of the contribution clause of the agreement which provides "if any claim of liability * * * shall result from the joint or concurring negligence of both parties hereto it shall be borne by them equally." See Pennsylvania Railroad, *supra,* 302 F.2d at 849. Although the question is not now before us, we think it self-evident that the lessee's success in establishing a defense of acquiescence also establishes its own and the railroad's joint or concurring negligence in maintaining a condition upon the leased premises dangerous to railroad employees.

## CROSS-APPEAL

Pursuant to the release agreement, Missouri Pacific paid the brakeman a lump sum of $96,500.00 and also paid the brakeman's hospital and medical expenses of $3,831.00. In addition to discharging Missouri Pacific and Oak Flooring from all claims arising from the incident of July 18, 1966, the release agreement, signed by the brakeman, included the following clause:

> This settlement is made upon * * * [brakeman's] representations that he is permanently injured and in consideration of this settlement it is understood and agreed that the said * * * [brakeman] will not hereafter be employed in any capacity by the Missouri Pacific Railroad Company * * * and all seniority rights as an employee are terminated.

Although the jury found that Missouri Pacifc entered into a reasonable and good faith settlement with its injured brakeman, it also found that $16,000.00 of the total amount of the settlement was attributable to the brakeman's agreement to relinquish his seniority and reemployment rights. *See* fn. 1, *supra.* Correspondingly, in entering judgment for Missouri Pacific, the district court deducted $16,000.00 from the total amount previously paid by Missouri Pacific.

On this cross-appeal, Missouri Pacific contends that the district court erred in reducing the amount of the judgment by this sum. We agree.

Our review of the record reveals no evidence that seniority or reemployment rights constituted an element of the brakeman's claim for damages. In establishing that the settlement was reasonable and made in good faith, Missouri Pacific introduced evidence concerning the nature and extent of the brakeman's injury, the course of its negotiations with the brakeman and his attorney, and other circumstances surrounding the settlement. Railroad personnel testified that because the brakeman had lost an arm, he could never qualify for reemployment and that the injured brakeman's seniority rights were worth nothing. They also testified that no consideration in fact was paid for the brakeman's agreement to relinquish his seniority and reemployment rights.

Missouri Pacific's claims attorney, who participated in the settlement negotiations, testified that the clause in question is the subject of bargaining in cases involving a recurring type of injury, such as disability of the back. He stated that in this case the clause appeared in the release as a matter of form; that "[a]ny time we pay an individual that type of money we just automatically insert that into the release." Oak Flooring introduced no evidence to the contrary.

It is not uncommon for the paying party to a settlement to prepare a document encompassing the release of existing claims, as well as nonexisting claims. For example, the release agreement also included a clause by which the brakeman discharged Missouri Pacific from any claim for damages from accidents, other than the one in question, occurring prior to the date of the release. The record contains no evidence of any other accident befalling the brakeman and consequently it cannot be said that part of the settlement was paid for the release of claims arising therefrom.

██ Similarly, no value can be ascribed to the brakeman's agreement to relinquish nonexistent reemployment rights. Thus, no basis existed for submission of this issue to the jury.[3]

We remand this case for further proceedings consistent with this opinion.

---

3. We note from the record that during its deliberations, the jury forwarded a written note to the trial judge which read:
    "We feel that both companies are at fault and it is our desire that both companies should share in the cost— what is legal procedure in this."

The trial judge did not respond. The trial judge earlier instructed the jury that Missouri Pacific was not entitled to reimbursement for the brakeman's relinquishment of his reemployment rights. This note might explain the jury's generosity in this regard.