**MISSOURI PACIFIC RAILROAD COMPANY, Appellee,**

v.

**INTERNATIONAL PAPER COMPANY, Appellant.**

**No. 79–1305.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 3, 1979.

Decided April 8, 1980.

Joseph A. Strode, Bridges, Young, Matthews & Davis, Pine Bluff, Ark., for appellant.

G. Ross Smith, Friday, Eldredge & Clark, Little Rock, Ark., argued, Herschel H. Friday and Frederick S. Ursery, Little Rock, Ark., on brief, for appellee.

Before LAY, Chief Judge,* BRIGHT and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

International Paper Co. (hereinafter IPC) appeals from a judgment entered in the District Court for the Eastern District of Arkansas[1] awarding Missouri Pacific Railroad Co. (hereinafter the Railroad) $11,-329.44 plus interest and costs under the indemnity provisions of an industrial sidetrack agreement. For reversal IPC argues the district court erroneously failed to (1) require the Railroad to prove negligence on the part of IPC as a condition of recovery under the indemnity agreement, (2) require the Railroad to prove its legal liability to the injured employee, and (3) find that the settlement was unreasonable. For the reasons discussed below, we affirm the judgment of the district court.

The Railroad provides rail service to IPC's paper mill and plant in Pine Bluff, Arkansas. Since January, 1958, the Railroad and IPC have been parties to an industrial sidetrack agreement which contains the following indemnity provisions (emphasis added):

2. Industry shall at all times keep a space of eight and one-half (8½) feet from the center line of each of Industry Tracks entirely clear of structures, material and obstructions of every sort and will observe an overhead clearance of twenty-two (22) feet above top of rail, nevertheless, Industry may erect and maintain loading platforms car floor height (3'8") which at no time shall be nearer than eight (8') feet to center line of any Industry Track; provided, Industry shall provide and maintain any greater clearance when and as required by any paramount authority. Industry shall defend, indemnify as insurer, and save harmless the Carriers from and against any and all liability, judgments, outlays and expenses whatsoever consequent on

any default at any time of Industry under this paragraph.

.    .    .    .    .

5. It is understood the movement of railroad engines involves some risk of fire and Industry assumes all responsibility for and agrees to indemnify Carriers against loss or damage to property of Industry or to property upon Industry's premises arising from fire caused by engines operated by Carriers, or either or them, on or in vicinity of Industry Tracks, for purpose of serving Industry, except to premises of Carriers and to rolling stock belonging to Carriers or to others, and to shipments in course of transportation.

Industry also agrees to indemnify and save harmless Carriers from and against loss, damage or injury from any *act or omission* of Industry, its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation while on or about Industry Tracks; and if any claim or liability other than from fire shall arise from joint or concurring *negligence* of any two or all of the parties hereto it shall be borne by them equally.

On June 6, 1972, Eddie Roach, a Railroad switchman, was injured on the premises of IPC's plant while performing switching operations for the Railroad. Roach was walking along the tracks when the ground beneath him gave way. His lower leg sank into an underground area filled with hot mud and steam. Roach suffered serious burns to his leg as a result. He was given first aid at the plant, treated at the county hospital emergency room, and later hospitalized at the Railroad's hospital in Little Rock for six weeks. Later investigation revealed that one of IPC's underground pipes had leaked steam into the ground, forming hot mud and steam covered by an undetectable surface crust.

---

* The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980.

1. The Honorable Oren Harris, United States Senior District Judge for the Eastern District of Arkansas.

The Railroad notified IPC about Roach's injury and the likelihood that Roach would assert a claim for damages. Roach subsequently sued the Railroad for damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, alleging the Railroad failed to provide a safe place to work. The Railroad again notified IPC of the claim but IPC continued to deny any responsibility under the indemnity provisions and refused to assume defense of the claim. On September 13, 1973, after negotiations, the Railroad and Roach reached a settlement of the FELA claim. The Railroad paid Roach $11,329.44, a sum which included Roach's lost wages and medical expenses. Roach also agreed to release two other injury claims.

The Railroad then filed this suit seeking full indemnity from IPC under the second paragraph of section 5 of the indemnity agreement.[2] The district court established the existence of diversity jurisdiction and applied Arkansas law. After a bench trial, the district court found that the record clearly established the Railroad's potential liability as a matter of law, that the Railroad made the settlement in good faith, and that the terms of the settlement were reasonable. The district court then concluded:

> The Court differentiates an agreement to indemnify for damage which results from indemnitor's negligent conduct from an agreement providing indemnity for damages which result from the indemnitor's failure to perform a specific contractual obligation. The final clause in the applicable provision speaks in terms of tort liability requiring application of tort concepts. The controlling language in the paragraph speaks in terms of performance of a promise requiring application of contract principles. The Court concludes, therefore, that the issue is contractual and, under the record established in the

case, the incident causing the injury to Mr. Roach is covered under the agreement.

*Missouri Pacific R. R. v. International Paper Co.*, No. PB–75–C–126 (E.D.Ark. Feb. 12, 1979) (slip op. at 9–10). The district court awarded the Railroad complete indemnity for the full amount of the settlement, $11,329.44 plus interest and costs.

■ First, IPC argues the district court erroneously failed to require the Railroad to prove negligence on the part of IPC as a condition of recovery under the indemnity agreement. We disagree. The short answer to IPC's contention is that the settlement of the FELA claim conclusively resolved the issue of liability, absent fraud or collusion. *E. g., Steed v. Central of Georgia Ry.*, 529 F.2d 833, 837 (5th Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976); *Miller & Company of Birmingham v. Louisville & Nashville R. R.*, 328 F.2d 73, 78 (5th Cir.), *cert. denied*, 377 U.S. 966, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964); *Chicago, Rock Island & Pacific Ry. v. United States*, 220 F.2d 939, 941 (7th Cir. 1955). As discussed further below, IPC was given notice and an opportunity to defend the FELA claim but refused to do so and denied any responsibility under the indemnity agreement. The Railroad was left in complete charge of the litigation and proceeded to settle the claim.

■ The settlement of the FELA claim effectively resolved the issue of IPC's liability in the indemnity action below because, under the indemnity agreement, IPC's liability to the Railroad is determined by the law making the Railroad liable to Roach, that is, FELA. *See Steed v. Central of Georgia Ry., supra*, 529 F.2d at 837; *Schiller v. Penn Central Transportation Co.*, 509 F.2d 263, 269 (6th Cir. 1975); *Seaboldt v.*

---

**2.** Both parties and the district court applied section 5 of the indemnity agreement. Thus, our analysis does *not* involve a question of indemnity under section 2, which imposes liability for breach of specific contractual obligations, for example, the duty to keep the track clearance space free from obstructions. In an action for indemnity under section 2, the indus-

try would be liable for the *full* amount of the railroad's damages upon a showing by the railroad that the industry breached its contractual duty and that the breach caused the railroad's damages (injury to the railroad's employee). *E. g., Anthony v. Louisiana & Ark. Ry., infra*, 316 F.2d at 865–66.

*Pennsylvania R. R.*, 290 F.2d 296, 297–98 (3d Cir. 1961); *Chicago, Rock Island & Pacific Ry. v. Dobry Flour Mills, Inc.*, 211 F.2d 785, 788 (10th Cir.), *cert. denied*, 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954) (hereinafter *Dobry Flour Mills*). *But cf. Union Pacific R. R. v. Bridal Veil Lumber Co.*, 219 F.2d 825, 832–33 (9th Cir. 1955), *cert. denied*, 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 849 (1956). In other words, IPC is liable to the Railroad under the indemnity agreement if IPC's conduct made the Railroad liable to Roach under FELA. The issue of the Railroad's liability under FELA was resolved by the settlement; the Railroad further established that the basis of its liability under FELA was the leakage of steam from one of IPC's underground pipes. IPC's conduct exposed the Railroad to liability under FELA (failure to provide a safe place to work); IPC is therefore liable to the Railroad under the indemnity agreement.

■ Why IPC's liability to indemnify depends upon the Railroad's liability under FELA and *not* IPC's liability under common law negligence to Roach (the injured employee) requires a brief explanation. It must be remembered that the Railroad's action below is based upon the indemnity agreement, not the general law of torts. Thus, IPC's liability to the Railroad is controlled by the provisions of the indemnity agreement itself. *See, e. g., Anthony v. Louisiana & Arkansas Ry.*, 316 F.2d 858, 866 (8th Cir.) (per curiam), *cert. denied*, 375 U.S. 830, 84 S.Ct. 74, 11 L.Ed.2d 61 (1963); *Pennsylvania R. R. v. Erie Avenue Warehouse Co.*, 302 F.2d 843, 847 (3d Cir. 1962); *Seaboldt v. Pennsylvania R. R., supra*, 290 F.2d at 298; *Booth-Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902, 906–11 (9th Cir. 1950); *Dobry Flour Mills, supra*, 211 F.2d at 788.

The applicable part of the indemnity agreement is the second part of section 5 which provides (emphasis added):

Industry also agrees to indemnify and save harmless Carriers from and against loss, damage or injury from any *act or omission* of Industry, its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation while on or about Industry Tracks; and if any claim or liability other than from fire shall arise from joint or concurring *negligence* of any two or all of the parties hereto it shall be borne by them equally.

Unlike section 2 which imposes liability for breach of a specific contractual obligation, the duty to keep the track clearance space free from obstruction, section 5 imposes liability upon IPC for "any act or omission" causing "loss, damage or injury" to the Railroad. The basis of indemnity under section 5 thus involves tort law principles. *E. g., Missouri Pacific R. R. v. Arkansas Oak Flooring Co.*, 434 F.2d 575, 580 (8th Cir. 1970); *Pennsylvania R. R. v. Erie Avenue Warehouse Co., supra*, 302 F.2d at 847. However, the phrase "any act or omission" cannot be equated with common law negligence. In the landmark case in this subject area, *Dobry Flour Mills*, which involved an indemnity agreement virtually identical to the one in the present case, the Tenth Circuit construed "any act or omission" to mean "the wrongful or negligent acts of [the indemnitor] which would create liability on the part of [the indemnitee]." 211 F.2d at 788; *see also Seaboldt v. Pennsylvania R. R., supra*, 290 F.2d at 297–98. The Railroad's liability to its employee arises by reason of the Railroad's breach of its nondelegable duty to furnish its employees a safe place to work under the FELA. When the area of work was made unsafe by an "act or omission" of IPC, the provision of the indemnity agreement under section 5 became operative.

■ The district court properly viewed the question whether IPC was liable to indemnify the Railroad as a contractual one and concluded that, under the record established in the case, IPC was liable. As evidenced by the settlement of the FELA claim and the trial testimony, especially the investigation by IPC's assistant safety director, it is clear that IPC's conduct was in

fact the basis of the Railroad's exposure to liability under FELA.[3]

■ The only remaining issue before the district court was whether IPC was liable for the full amount of the settlement or only half under the final clause of section 5 in the event of "joint or concurrent negligence." If *both* IPC and the Railroad were found to be actively or primarily negligent, the Railroad would have the right under the final clause of section 5 of the indemnity agreement to contribution from IPC for half of the damages (here the amount of the settlement). *E. g., Colonial Stores, Inc. v. Central of Georgia Ry.,* 279 F.2d 777, 779–80 (5th Cir. 1960); *Wanser v. Long Island R. R.,* 238 F.2d 467, 470 (2d Cir. 1956), *cert. denied,* 353 U.S. 911, 77 S.Ct. 668, 1 L.Ed.2d 665 (1957); *Foster v. Pennsylvania R. R.,* 201 F.2d 727, 730–31 (3d Cir. 1953); *Booth-Kelly Lumber Co. v. Southern Pacific Co., supra,* 183 F.2d at 910. The district court found that the Railroad was not "contributorily negligent." Slip op. at 8. In the frame of reference of this case, that determination indicated that IPC had proved no negligence on the part of the Railroad. This finding we believe necessarily precludes consideration by the court of the "joint and concurrent negligence" clause of the indemnity agreement. The record fully supports this conclusion. As between IPC and the Railroad, Roach's injury was caused by the wrongful act or omission of IPC; the Railroad's liability was based on its nondelegable duty to provide a safe place to work under the FELA. Under these facts, the Railroad was entitled to full indemnity. *E. g., Baltimore & Ohio R. R. v. Alpha Portland Cement Co.,* 218 F.2d 207, 211 (3d Cir. 1955); *Booth-Kelly Lumber Co. v. Southern Pacific Co., supra,* 183 F.2d at 910–11.

■ IPC next argues that the district court should have required the Railroad to prove *legal* liability to its injured employee. "Ordinarily, to sustain a claim upon an in-demnity contract such as we have here, it is necessary for the indemnitee to prove legal liability to the injured [employee]." *Dobry Flour Mills, supra,* 211 F.2d at 787. However, "the indemnitee need not prove its legal liability to the injured party when its indemnitor denies liability under a contract and refuses to assume defense of the claim or to otherwise hold the indemnitee harmless for any loss." *Missouri Pacific R. R. v. Arkansas Oak Flooring Co., supra,* 434 F.2d at 580; *see also Whisenant v. Brewster-Bartle Offshore Co.,* 446 F.2d 394, 401–02 (5th Cir. 1971); *Tankrederiet Gefion A/S v. Hyman-Michaels Co.,* 406 F.2d 1039, 1042–43 (6th Cir. 1969); *Jennings v. United States,* 374 F.2d 983, 986 (4th Cir. 1967). As found by the district court, the record clearly indicates the potential liability of the Railroad. IPC argues that this exception should not be applied here because the Railroad merely notified IPC of the FELA claim and failed to make any demand upon IPC to defend or otherwise settle the claim. We find this contention to be without merit. The district court expressly found that the Railroad repeatedly notified IPC of the FELA claim and that IPC "continued to deny any responsibility pursuant to the indemnity contract between the parties, although demands were made for the company to assume the obligation and defend the claim." *Missouri Pacific R. R. v. International Paper Co., supra,* slip op. at 3. Moreover, we note that IPC in its answer admitted notice and denial of any responsibility under the indemnity agreement.

■ Finally, IPC argues that the district court erred in finding the settlement was reasonable. IPC challenges the inclusion in the release of two injury claims other than the June 6 injury, the severity of Roach's injury, and the need for hospitalization. The district court properly attached little significance to the inclusion in the release of the two additional claims. The claims attorney for the Railroad testified that sub-

---

**3.** Ordinarily, summary disposition of this kind of indemnity action is inappropriate in view of the many factual and legal issues raised, other than the FELA liability of the Railroad, such as causation and concurrent negligence. *E. g., Steed v. Central of Ga. Ry.,* 477 F.2d 1303, 1306 (5th Cir. 1973).

stantial settlements automatically include releases for any other claims. This precise issue was addressed in the *Arkansas Oak Flooring* case. 434 F.2d at 581–82. The severity of Roach's injury and his need for hospitalization were the subjects of intense dispute between the parties. It is IPC's position that Roach's injury was minor and did not warrant a lengthy period of hospitalization.[4] The district court, however, ultimately agreed with the Railroad that Roach had been seriously injured and legitimately required hospitalization for six weeks. We cannot say that these findings were clearly erroneous. The record further indicated that Roach incurred substantial medical bills and was unable to work for about two months. Under these circumstances, we agree with the district court's assessment that the settlement was reasonable.

Accordingly, the judgment of the district court is affirmed.

---

4. Both IPC and the Railroad agree that Roach was only treated in the Jefferson County Hospital and was hospitalized in the Railroad's Little Rock hospital. The memorandum opinion of the district court incorrectly states that Roach was hospitalized in the Jefferson County Hospital for several days. This factual error is insignificant.