BURLINGTON NORTHERN,
INC., Appellant,

v.

HUGHES BROS., INC., a corporation,
Appellee.

No. 81–1229.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1981.

Decided Feb. 16, 1982.

employee, Burlington Northern (BN) sued Hughes Brothers (Hughes) claiming indemnity under its agreement; BN now appeals from a jury verdict denying indemnification.

*Facts.*

On October 29, 1953, Hughes and BN's predecessor, the Chicago, Burlington and Quincy Railroad, entered into an industrial or side track agreement. The railroad agreed to serve Hughes' plant in Seward, Nebraska under certain conditions. The relevant conditions are described in portions of paragraphs five, nine, and ten of the agreement:

5. Industry to Keep Siding Free from Obstructions:

The Industry shall, at its own expense, and in a manner satisfactory to the Railroad Company, keep said siding clear of snow, ice, weeds, or other obstructions. Upon failure so to do, the Railroad Company may perform said service and collect the entire expense thereof from the Industry.

9. Clearances, Use, and Safety Requirements:

The Industry agrees not to place or construct an elevator nearer than eight (8) feet from the nearest rail of any track of said siding or to construct, place, or permit any other building, excavation, or obstruction nearer than six (6) feet from the nearest rail.

10. Liability Provisions:

. . . .

The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage, or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally.

Rodney M. Confer, argued, Knudsen, Berkheimer, Beam, Richardson & Endacott, Lincoln, Neb., for Burlington Northern Inc., appellant.

Kevin, Colleran, argued, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., for Hughes Brothers, Inc., appellee.

Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.

LAY, Chief Judge.

This case involves interpretation of an industrial or side track agreement providing for indemnification by the industry for any loss or damage paid by the railroad to any of its employees when the latter's injuries are caused by the act or omission of the industry. After settling with its injured

On February 2, 1976, Richard Coatman, a BN employee, was injured during switching operations at the plant. As the track enters the Seward facility, it descends to approximately three feet below ground level. On both sides of the track as it descends are brick retaining walls. The walls are less than six feet from the nearest rail. Before the walls begin, there is a sign stating, "WARNING STRUCTURES WILL NOT CLEAR MAN ON SIDE OF CAR." Witnesses testified that BN erected the sign and that its employees knew the walls were too close to the track to allow a person riding on the side of a car to pass safely.

Coatman was riding on the side of a box car which was being pushed into the plant by a locomotive. He knew that he could not pass between the car and the wall. But when he attempted to dismount, first onto the ground before the wall and then onto the wall itself, his feet slipped on accumulated snow and ice. Evidence revealed that Hughes' employees were aware that railroad employees often walked on the retaining walls. Coatman's calf was squeezed between the wall and car causing a compound fracture and soft tissue injury. He was unable to work for 14 months and thus lost $27,038 in wages. BN paid his medical bills of $8,533.

Coatman asserted a claim against BN under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 et seq. BN notified Hughes of the claim, asserting that Hughes was obligated to indemnify BN under the industrial track agreement and offering Hughes an opportunity to defend or negotiate the claim. Hughes denied any obligation. Hughes was notified on several other occasions and continued to deny responsibility. BN settled with Coatman for $55,726.

BN then sued Hughes for indemnification under the side track agreement. A jury trial was held. At the close of the evidence, BN moved for a directed verdict of full indemnity or, alternatively, of one-half the settlement amount. The trial court denied the motion. The trial court instructed the jury that BN had acquiesced in the placement of the wall and therefore if the jury found that its placement was a proximate cause of the injury, BN could only recover one-half the settlement amount. The jury thereafter found that Hughes had no obligation to indemnify BN. BN brings this appeal. We reverse and remand for a new trial.

BN urges: (1) it was reversible error for the trial court to instruct the jury that BN had to establish its liability for the injury; (2) it was reversible error for the court to instruct the jury that if BN was negligent, it had to prove Hughes' negligence under common law standards in order to recover; (3) the court should have directed a verdict in favor of BN for one-half its liability; (4) the court should not have granted Hughes' request for a partial directed verdict on the issue of BN's concurrent negligence; and (5) there was insufficient evidence to support the jury's verdict.

*Reasonableness of Settlement.*

The railroad argues that the trial judge erroneously required it to prove that it was liable for its employee's injury. The court instructed the jury that it should determine whether BN's settlement agreement with Coatman was "reasonable and in good faith." The court told the jury that if it found the settlement was unreasonable or entered into in bad faith, the jury should render a verdict for Hughes. The court instructed that the jury had to determine whether BN "reasonably thought it would be liable to Mr. Coatman" and then stated the standards of liability under the FELA as well as the rules governing reduction of an employee's damages based on his or her contributory negligence.

A party seeking indemnity after settling a claim upon notice to the indemnitor must show that its settlement was reasonable and made in good faith. The fact finder generally must evaluate the reasonableness of the settlement by comparing the nature of the injury and the damages incurred to the size of the settlement. The fact finder should also review the good faith of the settlor by evaluating the probability that it would have been held liable. *See Chicago, R.I. & P.R. Co. v. Dobry Flour*

*Mills, Inc.,* 211 F.2d 785, 788 (10th Cir.), *cert. denied,* 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954). When liability under an indemnity contract has been denied by the indemnitor, proof of actual legal liability to the injured party is not a requirement. As this court recently observed, "the indemnitee need not prove its legal liability to the injured party when its indemnitor denies liability under a contract and refuses to assume defense of the claim or to otherwise hold the indemnitee harmless for any loss." *Missouri Pac. R.R. Co. v. International Paper Co.,* 618 F.2d 492, 497 (8th Cir. 1980) (*quoting Missouri Pac. R.R. Co. v. Arkansas Oak Flooring Co.,* 434 F.2d 575, 580 (8th Cir. 1970)); *see also Central Nat'l Ins. Co. v. Devonshire Coverage Co.,* 565 F.2d 490, 495–96 (8th Cir. 1977).

BN notified Hughes of the claim and requested that it assume responsibility. BN also kept Hughes informed about the settlement negotiations. Hughes refused to participate in any manner.

█ In the present case, BN's potential liability under the FELA was established as a matter of law. *See International Paper,* 618 F.2d at 497; *Arkansas Oak Flooring Co.,* 434 F.2d at 580. Under the FELA, BN possessed a "nondelegable duty to provide its employees with a safe place to work." *Shenker v. Baltimore & Ohio R.R. Co.,* 374 U.S. 1, 7, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963). Additionally, BN was liable for its employee's injury if its negligence "played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). The placement of the wall and the failure to remove the snow and ice were undisputably contributory factors in Coatman's injury. Thus *the likelihood* that the railroad would be held liable was clearly established and the only issue which should have been submitted to the jury was the reasonableness of the amount of the settlement.

█ In determining whether BN's settlement was reasonable, the trial court also instructed the jury to consider whether the employee was guilty of contributory negligence which might have diminished the damages BN may have been required to pay. We find this erroneous. In the trial of an FELA case, the jury may diminish an employee's recovery "in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53. Diminution requires comparing proof of the employer's and employee's negligence. Requiring a railroad in an indemnity suit to prove the exact nature and consequences of its negligence, to allow comparison with the employee's alleged negligence, undermines the policy in favor of settlement after due notice to the indemnitor. A showing of reasonableness in an indemnity suit should not involve a plenary trial of the underlying FELA issues. Nor does BN have an obligation to prove its employee's actual damages. To show the settlement was reasonable, the railroad need only prove its potential liability, a relatively simple showing under the strict FELA standards, and that the settlement amount was *reasonably related* to its employee's injuries. On remand, BN is required to show only that the size of the settlement was reasonably related to the damages which Coatman suffered. If the jury finds the amount paid was not reasonable, then it should determine what amount would be reasonably related to the employee's injuries. If such findings are made, the latter amount is BN's loss for purposes of indemnification.

*Hughes' Obligation Under Indemnity Agreement.*

█ BN asserts that the trial court should have directed the jury that Hughes had an obligation to indemnify BN. BN also urges that it was error for the trial judge to instruct the jury that in order to recover one-half of its claim, BN had to prove that Hughes was guilty of common law negligence.

Paragraph 10 of the agreement reads in part:

The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage, or injury from any act or omission of the Industry, its employ-

ees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track; and if any claim other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally. The court told the jury that it should find that Hughes had a duty to fully indemnify BN if it was established that: (1) Hughes' act or omission caused the injury in question and (2) no negligence on the part of BN caused or contributed to the injury. Alternatively, the court instructed that if the railroad was negligent, it could recover one-half of its claim only if it could prove that the joint or concurring negligence of BN and Hughes caused the injury.

We find these instructions to be erroneous. The trial court's interpretation of the indemnity agreement attempts to separate the two clauses contrary to this court's construction of industrial indemnity agreements.

In *International Paper*, this court held that an industry's obligation to indemnify a railroad under an industrial track agreement is a contractual duty and not a duty arising under the common law of tort. 618 F.2d at 496. These contracts are made in contemplation of the railroad's liability under the FELA. The phrase "act or omission" includes any act or omission which constitutes a violation of the railroad's duty to provide a safe work place and thus subjects it to liability under the act. *Id.; Steed v. Central of Ga. Ry. Co.*, 529 F.2d 833, 837 (5th Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976); *Schiller v. Penn Cent. Transp. Co.*, 509 F.2d 263, 269 (6th Cir. 1975); *Dobry Flour Mills*, 211 F.2d at 788. The obvious purpose of the agreement is to provide for indemnification of the railroad when the industry's act or omission violates the railroad's non-delegable duty to furnish a safe place for its employees to work.

Paragraph 10 of the agreement should be read as a whole. Under our previous cases, the jury must first determine if an act or omission of the industry caused the injury. If the jury makes an affirmative finding, the railroad is entitled to indemnity under the agreement. In the event the industry can prove the railroad was negligent and its negligence contributed to the injury, then the railroad may only recover one-half its liability. *See International Paper*, 618 F.2d at 497 (after the district court determined that industry's act or omission created unsafe condition which caused injury, "only remaining issue . . . was whether [industry] was liable for the full amount of the settlement or only half under the final clause . . . in the event of 'joint or concurrent negligence.' ").

In the present case, we find the district court should have granted BN's motion for a directed verdict as to Hughes' obligation to indemnify BN for one-half its loss (as explained below). Construing the facts in favor of the defendant, Hughes, we conclude that an act or omission of Hughes was a cause of the injury. In *Rouse v. Chicago, Rock Island and Pacific Railroad Co.*, 474 F.2d 1180, 1184 (8th Cir. 1973), this court sustained the grant of a directed verdict in favor of the railroad under an industrial track agreement on facts virtually identical to those of this case. We have already found that BN faced potential liability to its employee for failure to furnish a safe place to work. It is undisputed that Hughes' construction of the retaining walls and its failure to remove or otherwise alter the walls so that a man riding on the side of a car would not be caught between the car and the walls were a cause of the injury. These undisputed facts compel a finding that Hughes had an obligation under paragraph 10 of the contract to indemnify BN for at least one-half of its loss, assuming the amount paid is shown to be reasonably related to the employee's injury. *See* p. 283, *supra.*

*BN's Concurring Negligence.*

Once Hughes' obligation is established, the only remaining jury question is whether BN is entitled to full indemnity or one-half of its claim. The answer depends on whether BN was guilty of negligence which was a proximate cause of the injury.

■ The burden of proof on this issue should have been on Hughes. BN stated a complete cause of action under the first clause of paragraph 10 of the contract without pleading its own freedom from negligence. In its answer, Hughes raised the issue of BN's negligence. Hughes, in essence, raised a contractual defense which it should have borne the burden of proving. The district court erred in placing this burden on the railroad.

The district court submitted the question of BN's negligence to the jury, but instructed the jury that if it found that the presence of the retaining wall was a proximate cause of BN's liability, it could only allow BN to collect one-half its liability from Hughes. The court ruled that BN, as a matter of law, had acquiesced in the presence of the wall. BN argues that this was error.[1]

A preliminary question, suggested above, is what standards govern the determination of whether the railroad was "negligent" under the joint negligence clause. Some courts, finding that the entire indemnity provision was written in contemplation of the railroad's duty under the FELA, have held that joint negligence means joint violation of the Act's standards. See, e.g., Wanser v. Long Island R.R. Co., 238 F.2d 467, 470 (2d Cir. 1956), cert. denied, 353 U.S. 911, 77 S.Ct. 668, 1 L.Ed.2d 665 (1957). Other courts read the term negligence to mean common law negligence. See, e.g., Colonial Stores, Inc. v. Central of Ga. Ry. Co., 279 F.2d 777, 780 (5th Cir. 1960). This court and others have not explicitly ruled on the standard of conduct implicit in the joint negligence clause, but have stated that the railroad's fault must be serious and distinct from that of the industry in order to bar full recovery. See, e.g., Missouri Pac. R.R. Co. v. Winburn Tile Mfg. Co., 461 F.2d 984, 989 (8th Cir. 1972).

■ While indemnification is predicated on the railroad being liable to an employee under the FELA, it does not follow that mere proof of the railroad's liability under the FELA can be enough to constitute negligence. Booth-Kelly Lumber Co. v. Southern Pac. Co., 183 F.2d 902, 907 (9th Cir. 1950). As has been stated, the railroad may be liable for failing to furnish a safe place to work when the sole cause of the injury is an act or omission of the industry. It would be coherent to construe the joint negligence clause to bar full recovery when an act or omission of the railroad, which was distinct from that of the industry, was a cause of the injury. But use of the term "negligence" in the second clause as compared to "any act or omission" in the first clause indicates that the parties intended to require more than a violation of the strict standards created by the FELA to bar the railroad from full recovery. We conclude if the industry cannot prove that the railroad was negligent under common law standards, the railroad is entitled to full indemnity.

The district court directed the jury if it found the wall was a proximate cause of the injury, to find BN jointly negligent because BN had acquiesced in the presence of the wall. In supporting this action, defendant relies on the Rouse decision in which this court upheld a directed verdict on acquiescence in similar circumstances. 474 F.2d at 1182–83. The Rouse court relied on Arkansas Oak Flooring, 434 F.2d at 576–81. The decision in Arkansas Oak Flooring, in turn, rested on the Restatement of Restitution § 95 (1937). Section 95 provides:

Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in

1. BN asserts that if it was negligent in acquiescing in the existence of the wall, Hughes must be found negligent in maintaining it. See Arkansas Oak Flooring, 434 F.2d at 581. We agree, but as we have discussed, Hughes' liability is premised simply on its act or omission causing the injury.

the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

Noteworthy, however, is the comment following § 95 which states:

> The fact that the payor knew of the existence of the dangerous condition is not of itself sufficient to bar him from restitution. In many cases it is only because he had knowledge of the condition that he is liable to the person harmed. If, however, the payor not only knew of the condition but acquiesced in its continuance, he becomes in effect, a joint participant with the other in the tortious conduct and hence is barred from indemnity.

 Without discussion, the *Rouse* and *Arkansas Oak Flooring* courts import the tort law concept of acquiescence into a set of contractual duties. In this case, the railroad and industry specifically contracted that BN would be fully indemnified unless its negligence was a proximate cause of the injury. Thus the question is not simply whether BN acquiesced in the placement of the wall, but whether, considering all the circumstances, proof that the railroad knew of the placement of the wall is sufficient to show that it acted negligently. In answering this question, we must view the evidence in the light most favorable to the party against whom the verdict was directed. *Koch v. Secretary of HEW*, 590 F.2d 260, 261 (8th Cir. 1978). In evaluating a similar claim, the Third Circuit wrote, "One hallmark of such acquiescence is long continued awareness of a dangerous situation by the indemnitee without either taking any corrective measure or calling upon the indemnitor to do so." *Pennsylvania R.R. Co. v. Erie Ave. Warehouse Co.*, 302 F.2d 843, 848 (3rd Cir. 1962). The evidence shows BN took several actions to reduce the danger created by the walls. It erected a warning sign and, apparently, implemented switching procedures designed to avoid injuries. Under the circumstances, we find the question of BN's negligence should have been submitted to the jury. *See Pennsylvania R.R. Co. v. M.K.W. Corp.*, 301 F.Supp.

991, 994–95 (N.D.Ohio 1969) (finding railroad negligent under similar circumstances).

We reverse and remand for a new trial.