**UNITED STATES of America**

v.

**Thomas L. ROBERTSON, Appellant.**

**No. 72–1781.**

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Argument June 8, 1973.

Decided Jan. 23, 1976.

---

3. Our judgment is of course without prejudice to future recommendations or requests for release.

Mortimer M. Caplin and Leon E. Irish, Washington, D. C. (appointed by this Court), for appellant.

Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry, Henry F. Greene, Warren L. Miller and Frederick C. Moss, Asst. U. S. Attys., for appellee.

Before BAZELON, Chief Judge, WILKEY, Circuit Judge, and KAUFMAN,* United States District Judge for the District of Maryland.

## PER CURIAM:

Appellant was convicted of second-degree murder, assault with intent to kill while armed, and carrying a pistol without a license. On his first appeal, this court was asked to decide whether the trial judge should have *sua sponte* submitted to the jury the question of whether, under the standards of *United States v. Brawner,* 153 U.S.App.D.C. 1, 471 F.2d 969 (1972), appellant was mentally responsible for his act. The trial judge had held a hearing to decide that question after the verdict was returned. But because appellant and the Government both opposed raising the insanity defense, only those experts whose written reports indicated they believed appellant was mentally responsible were called to testify, and even they were not cross-examined. We held that a decision not to impose the insanity defense "may not rest solely on the unchallenged testimony of the government experts in the absence of testimony of the other experts." *United States v. Robertson,* 165 U.S.App.D.C. 325, 507 F.2d 1148, 1159 (1974). We therefore remanded the record to the district court for supplementation, so that it could "hear evidence supporting as well as opposing the imposition of an insanity defense." *Id.* at 1158.

The record has been returned to us along with a memorandum opinion by the district judge which is reprinted as an appendix to this opinion. Briefly, after hearing the conflicting testimony of five experts, the district court "is no longer of the view that defendant's rejection of the insanity defense was essentially an assertion of manhood by an intelligent person and motivated by his rejection of the racial stereotype of 'all angry Blacks are mentally ill.'" Rather, the court concluded "that there is sufficient evidence of a serious mental illness which substantially affected defendant's mental and emotional processes and behavior controls such as to require a determination of his criminal responsibility."

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

We agree. And since appellant apparently now desires to raise the insanity defense, the troubling questions raised by imposing that defense over his objections, *see United States v. Robertson, supra,* at 1161 (Bazelon, C. J., concurring) and at 1164–65 (Wilkey, J., dissenting), need not be faced. Accordingly, as suggested by the district court, the case is remanded for a new trial. It will be within the district court's discretion to decide whether to limit the new trial to the criminal responsibility issue.

### APPENDIX

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

### CRIMINAL NUMBER 1631–71

[Filed Nov. 21, 1975, James F. Davey, Clerk]

### UNITED STATES OF AMERICA

v.

### THOMAS L. ROBERTSON

### MEMORANDUM

Following the Order of the United States Court of Appeals for the District of Columbia Circuit remanding this case for supplementation of the record, Appellate Counsel requested that they not be appointed as Amici to conduct the required hearing. Trial counsel also requested and was granted release from any further responsibilities on behalf of the defendant, Thomas L. Robertson. Thereafter, James T. Wright, an experienced and respected member of the bar of this Court, accepted appointment as counsel for defendant. Defense counsel was directed to review the transcript of the trial, consult with trial and appellate counsel, interview and consult with the defendant, and having done so, advise the Court when he was ready to proceed. At the next status call, defense counsel advised the Court that the defendant had changed his position and desired to assert an insanity defense. On the hearing date, defendant and his counsel reiterated a desire to assert an insanity defense.

Notwithstanding the changed position of the defendant, in which his counsel concurred, regarding the assertion of the insanity defense in a retrial, this Court was of the opinion that a hearing was still required by the Order of the Court of Appeals. The testimony of Drs. Albert E. Marland, John R. Cavanaugh, Alice Gullattee, Ronald L. Dockett and Alex J. Whyte, was taken. Additionally, the record was supplemented by an additional Report of St. Elizabeths Hospital.

Dr. Albert E. Marland, a practicing psychiatrist since 1920, testified in detail concerning his examinations of the defendant on five (5) different occasions in October 1971, at the St. Elizabeths Hospital. On each of those occasions, the defendant's behavior was excellent and he appeared intelligent, was cooperative and spoke with a good vocabulary thus presenting no difficulty in communication between Dr. Marland, and the defendant. He found that Robertson was not delusional although "he used the expression that he had never heard imaginary voices, unless you wished to consider those things that occur popping into one's head—one's thoughts seem almost to become conscious at times—but beyond that, there was no possible hallucinatory question." Dr. Marland further explained his conclusion on cross examination: "As I said, the voice of his conscience within himself, these of course, are not hallucinatory in any sense. That at no time in his life, according to him, has he ever experienced voices or communications from outside of himself. He did feel that he was a victim on a broad sense of other people manipulating things so that he was a victim." Dr. Marland described this as a "paranoid trend—not too uncommon in many individuals and doesn't necessarily mean that it has to be schizophrenic or psychotic in any way." In the doctor's opinion, Robertson had no organic psychosis and was not a schizophrenic and he specifically disagreed with any diagnosis of schizophrenia, schizoid affected type. The doctor stated: "If there was anything . . . it would be . . . called affective psychosis, the manic

phase, the over-emotionalism . . . I think that might be the trend to investigate, but not schizoid. I don't think there is any schizoid element of any appreciable amount." Then Dr. Marland volunteered this statement: "This man is a puzzle. I spent more time with him than with most. In fact, I would say that he was a real case study. I enjoyed being with him. He talked so freely."

Dr. John R. Cavanaugh, a practicing psychiatrist since 1935, stated that he had examined Robertson on two (2) occasions in the cell block of the United States Court House. He had no difficulty in talking with the defendant and found him to be very intelligent. He, too, found that Robertson was not delusional and was without evidence of schizophrenia of any type.

Dr. Alice Gullattee, a psychiatrist, an Assistant Professor in Psychiatry and Family Practice at Howard University Medical School, and a career teacher in drug abuse substances, examined Robertson on November 30, 1971, and December 7, 1971, at the D. C. Jail. When she examined him on November 30th, she found that although he was oriented in terms of place or person and was not hostile, there was considerable looseness in association as she talked with him and that his answers to her questions, unless structured by her, were not always relevant or coherent. His intellect was not diminished and she had no question of his intellectual ability.

On the occasion of her second examination Dr. Gullattee found Robertson more calm and with a fair ability to recall what had happened to him in the past. She found in him well-fixed "delusional ideas of paranoia or with paranoid flavor" in that he expressed thoughts that "they" were poisoning him. He was fearful that he would be confronted with violence, hence his refusal to wear his eyeglasses so that he would be prepared to fight any aggressive behavior. Although not indicated in her written report, Dr. Gullattee found from her interviews with defendant's family members that his actions had become bizarre and agitated after his release from a Youth Act commitment served at a series of institutions which had included extended periods of solitary confinement and that they had sought commitment to St. Elizabeths Hospital, to no avail. More significantly, defendant's wife detailed to Dr. Gullattee his use of drugs and more particularly the drug mescaline which made him "absolutely wild" and which eventually precipitated incidents which caused her to leave the District of Columbia and return to Ohio because of her fear that her husband would kill her. Defendant's use of this drug commencing in April 1971, in the opinion of Dr. Gullattee, could account for defendant's bizarre and violent behavior because he was from his early years a borderline "normal-abnormal" personality and that frequently just the use of mescaline (peyote) by such a person could cause a full-blown psychosis. Additionally, she felt that his earlier use of other drugs and his impulsive, defensive, paranoid behavior was an attempt to treat himself for his emotional disturbance.

More indicative to Dr. Gullattee of the nature of Robertson's illness was his description of the events of August 21, 1971, preceding the Aleshire shooting and the manner in which he described that shooting. Robertson "described what would typically be called by those of us in psychiatry as a depersonalization phenomenon where he was an observer to an act that was being committed without the ability to stop that act from progressing."

From her observations of the defendant, her discussions with his family, and from a review of his previous medical records, Dr. Gullattee stated unequivocally that Robertson suffered with schizophrenia, schizo-affected type and that there was a direct causal relationship between that illness and the killing.

At the request of the Public Defenders Service, Dr. Ronald L. Dockett, a Clinical Psychologist conducted a psychological examination of the defendant on January 12th and 13th, 1972, at the D. C. Jail. He concluded from his examination that

Robertson had a highly systematized and encapsulated delusional system that was paranoid in nature. His specific diagnosis was paranoid schizophrenia. In his opinion the defendant's delusional system related primarily to his sexual confusion and to the effects of the "system" and his perception of White persons in terms of their acting against him.

Dr. Alex J. Whyte, Consulting Psychiatrist with the Office of Forensic Psychiatry, examined the defendant briefly on June 13, 1972. This examination was at the request of Dr. Lee, Medical Officer at the D. C. Jail, because of defendant's bizarre behavior. Dr. Whyte found him partially restrained in a bed, rocking back and forth, incoherent and responding with bizarre, delusional statements. He had a mildly euphoric grin and an inappropriate affect. Because of the overwhelming psychotic decompensation, Dr. Whyte could not assess either the defendant's personality type or his mental disorder. However, he arrived at a working diagnosis of acute schizophrenic reaction-undifferentiated, and ordered Robertson returned to St. Elizabeths Hospital.

Dr. Elizabeth Strawinsky, Clinical Director at St. Elizabeths Hospital, rendered a report of a clinical conference in which "he rather cleverly expressed the twist of being fully aware of these events and his being charged with them, but denies that he would know any of the details, since of course, he wasn't at the scene of the crime at the time." The Conference reaffirmed his previous diagnosis: "All felt that his prior diagnosis (301.78 Antisocial Personality, Severe) still applied for essentially the same reasons in that his antisocial attitudes, though generally associated with the group, also are operative and alienated him with that group." He was found to be still competent for trial and that "his mental disease did not substantially impair his behavior controls and the alleged offenses would not have been a result or a product of his illness."

In weighing the evidence now before this Court as it relates to the issue of defendant's criminal responsibility on August 21, 1971, and considering the defendant's reasons for rejecting an insanity defense, this Court is persuaded that there was and still is a serious and unresolved question of the true nature of defendant's mental illness and the connection between that illness and his criminal acts. Further, this Court is no longer of the view that defendant's rejection of the insanity defense was essentially an assertion of manhood by an intelligent person and motivated by his rejection of the racial stereotype of "all angry Blacks are mentally ill." Others of defendant's acts previously interpreted as malingering, rebellion, etc., may in fact be symptomatic of a serious mental illness of long duration. In this regard, the extensive testimony of Dr. Alice Gullattee is of major significance, especially as it is buttressed by the opinions of Drs. Dockett and Whyte and even to some degree by the admission of Dr. Marland that Robertson presented a "puzzle" . . . "a real case study."

Considering the record as supplemented, it is the opinion of this Court that there is sufficient evidence of a serious mental illness which substantially affected defendant's mental and emotional processes and behavior controls such as to require a determination of his criminal responsibility under the rule of *U. S. v. Archie Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969 (1972).

Since the defendant, with the assistance of his present counsel, now vigorously asserts his desire to present an insanity defense, this Court respectfully suggests that the question whether or not the defense should have been imposed *sua sponte* is now moot and this case should be remanded for a new trial.

/s/ Aubrey E. Robinson, Jr.
AUBREY E. ROBINSON, JR.
United States District Judge

Dated: November 21, 1975.