714 So.2d 832 (1998)
Stephen L. FREEMAN
v.
NORFOLK SOUTHERN RAILWAY COMPANY, INC., Alabama Great Southern Railroad Company, Norfolk Southern Corporation, Western Gas Resources, and GLNX Corporation.
No. 97-CA-2013.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1998.
*833 Benjamin R. Slater, III, Mark E. Van Horn, Cory R. Cahn, Slater Law Firm, New Orleans, for Appellee The Alabama Great Southern Railroad Company.
Susan A. Daigle, James T. Rivera, Lafayette, for Appellant Western Gas Resources, Inc.
Before BARRY, WALTZER and LANDRIEU, JJ.
LANDRIEU, Judge.
Plaintiff Stephen L. Freeman sued The Alabama Great Southern Railroad Company (AGS), Western Gas Resources, GLNX Corporation, and Frit Car Company in connection with damages he allegedly sustained on June 4, 1993, while performing a routine switching operation at the Western Gas facility in Toca, Louisiana.[1] Plaintiff, an AGS employee, filed suit against AGS under the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51 et seq., and against Western Gas under Louisiana law, La. Civ.Code art. 2315. On October 30, 1996, AGS filed a cross-claim against Western Gas seeking contractual indemnification and/or contribution based on an industrial track agreement dated September 5, 1961, by and between AGS and Western Gas. Thereafter, Western Gas filed a cross-claim against AGS seeking contractual indemnification and/or contribution under the same agreement, but only if the agreement were found to be applicable, which Western Gas denied.
AGS moved for summary judgment on Western Gas's cross-claim, asserting the agreement did not entitle Western Gas to contractual indemnification and/or contribution under any set of facts. Western Gas opposed the AGS motion and filed its own motion for summary judgment, maintaining that the agreement did provide for indemnity and/or contribution.
With written reasons, the District Court on May 13, 1997, granted the motion for summary judgment filed by AGS and denied the *834 cross-motion for summary judgment filed by Western Gas. After reviewing the case de novo, we reverse the judgment of the District Court.
The issue presented is whether the industrial track agreement entitles the industry, Western Gas, to indemnification and/or contribution from the railroad, AGS, in the event both parties are ultimately determined to be jointly or concurrently negligent with respect to the claims asserted by the plaintiff.
The agreement, entered into between the predecessors of Western Gas and AGS, governs a spur track constructed, maintained, and operated by the railroad on property belonging to the industry. The agreement provides in pertinent part:
8. Industry will indemnify and save harmless Railroad against any and all damages resulting from negligence of Industry, its servants and employees, in and about said industrial tracks and the rights of way therefor....
Industry furthermore agrees that inasmuch as the loading or unloading of commodities by Industry from tank cars placed upon said industrial tracks by Railroad for account of Industry ... may create risks of fire or other loss, injury or damage, which would not otherwise accrue, Industry will protect and indemnify Railroad and save it wholly harmless from the consequences of any property loss or damage, death or personal injury whatever, accruing or suffered or sustained from or by reason of any act, negligence or default of Industry, ... in or about or in connection with the loading and unloading of commodities, including but not limited to liquefied petroleum gases, from cars placed on said tracks for loading or unloading, ... provided that Industry shall not be held responsible for any loss of life or personal injury, or damage to cars or property of Railroad, or property of third persons, accruing from the negligence of Railroad, without fault of Industry, ... and provided further that if any claim or liability for death of or injury to person or property loss or damage shall arise from the joint or concurring negligence of the parties hereto, it shall be borne by them equally. [Emphasis added.]
Railroad hereby stipulates for the foregoing protection, as a condition of its agreement, herein expressed, to afford the above described terminal services and facilities to Industry elsewhere than at its regular station.
Western Gas and AGS agree on two points, assuming the agreement is applicable to the case. First, if AGS is found liable under its FELA obligations to the plaintiff for unsafe conditions resulting solely from the act or omission of Western Gas, then AGS is entitled to full indemnity. Second, if AGS is found liable, but no negligence is found on the part of Western Gas, no indemnity is owed to AGS by Western Gas.
Western Gas and AGS, however, disagree on the indemnity/contribution outcome when they are jointly or concurrently negligent. The agreement provides that, in such a situation, "any claim or liability ... shall be borne by them [Industry and Railroad] equally." AGS argues that, when Industry and Railroad are found to be jointly or concurrently negligent, Industry is responsible for 100 percent of its liability and 50 percent of any liability attributable to Railroad. Western Gas counters that the plain language of the agreement provides that Industry and Railroad are each responsible for 50 percent of the total damages awarded to the plaintiff, regardless of the fault allocated to either party. The District Court concurred with the view espoused by AGS, namely that, if AGS and Western Gas are found to be jointly or concurrently negligent, Western Gas is responsible for 100 percent of the liability attributed to it and, in addition, Western Gas must indemnify AGS for 50 percent of any liability attributed to AGS.
Western Gas relies on Parsons v. Sorg Paper, 942 F.2d 1048 (6th Cir.1991), in which the industrial track agreement was similarly worded. Before trial, the industry and the railroad settled with the railroad employee for $200,000.00: Sorg Paper paid $112,500.00 and Conrail paid $87,500.00. Conrail then claimed indemnity from Sorg Paper under the track agreement. The trial court rejected the claim, finding Conrail negligent *835 and that its negligence had contributed to the plaintiff's injury. The Sixth Circuit noted Conrail and Sorg Paper had stipulated in the settlement agreement that, if Conrail were found negligent under common law, then it would reimburse Sorg Paper $12,500.00 so that each entity contributed one-half to the settlement. However, after finding Conrail to be without fault, the appellate court concluded Sorg Paper was obligated to indemnify Conrail in full. Consequently, as the District Court below observed, the "equal shares" portion of the agreement was never considered by the Sixth Circuit.
In Burlington Northern, Inc. v. Hughes Bros. Inc., 671 F.2d 279 (8th Cir.1982), and Burlington Northern, Inc. v. Bellaire Corp., 921 F.2d 760 (8th Cir.1990), relied upon by AGS, the indemnity agreements provided, as does the instant agreement, for any claim or liability arising from the joint or concurring negligence of both parties to be borne by them equally. The plaintiffs in both cases sued only the employer railroad. The railroad settled the cases and sought indemnification from the industry for the settlement funds paid. Thus, the sole issue was whether the railroad would receive full indemnity or recover only one-half of its liability. The Burlington courts concluded that under the agreement, the railroad could recover only one-half of its liability if the industry proved that the railroad was independently negligent and such negligence contributed to the injury.
Neither Burlington court was confronted with the exact issue presented here, i.e., whether, assuming joint or concurring negligence, the industry must reimburse the railroad for half of the railroad's liability and at the same time bear the full amount of its own liability. We disagree with the District Court that the Burlington cases dictate an affirmative answer to that query. Under FELA, the railroad is ultimately responsible for providing the employee with a safe place to work. Parsons, 942 F.2d at 1050; Burlington Northern, Inc. v. Hughes Bros., Inc., 671 F.2d at 283. This duty is nondelegable, and the railroad is liable to its employee even if the industry's act or omission was the cause of the injury. Parsons, 942 F.2d at 1050. The railroad, therefore, must either seek indemnity from the industry through the industrial track agreement or be fully responsible for its employee's damages, minus any amount attributable to the employee's comparative negligence. See Parsons, 942 F.2d at 1050; Burlington Northern, Inc. v. Hughes Bros., Inc., 671 F.2d at 284.
In both Burlington cases, the railroad first settled with its injured employees, who in light of FELA were not required to sue the industries, and then sought indemnification from the industries. Thus, the railroad's liability was equal to the total settlement tendered. The courts were called upon to determine whether the railroad was entitled to indemnification from the industry and, if so, whether the industry had to pay half or all of the railroad's liability. To obtain full indemnification, the railroad had to prove that the industry's act or omission resulted in an unsafe working environment. To limit indemnification to one-half of the railroad's liability, the industry had to establish that the railroad was independently negligent under a common law theory of negligence, as opposed to any negligence of the industry imputable to the railroad by operation of FELA. The Burlington courts discussed the nature and proof of the railroad's negligence so as to trigger the equal sharing provision of the indemnity agreement; they did not discuss whether the "equal sharing" language meant equal shares in the liability attributable only to the railroad. In sum, none of the cases cited by either the district court or the parties is dispositive of the issue presented here.
In Louisiana, the general rules governing the interpretation of contracts apply in construing indemnity agreements. Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982, 984 (La.1986). The interpretation of a contract is the determination of the common intent of the parties. La. Civ.Code art.2045. Civil Code article 2046 sets forth a general rule of construction, providing that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Further, in determining the sense of the words of a contract, words are to be given their generally *836 prevailing meaning. La. Civ.Code art. 2047; Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342, 345 (La.1991). Lastly, in case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La. Civ.Code art. 2056.
Indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to one primarily responsible for the act that caused the damage. Green v. TACA Int'l Airlines, 304 So.2d 357, 359 (La.1974). Contribution apportions the loss among joint tortfeasors and requires each to pay his virile share of the damages that result from the wrong. Id.
Applying these principles to the agreement in question, we find the District Court erroneously concluded that Western Gas is responsible for its own liability and one-half of the liability of AGS, if the factfinder determines the claim arose out of the joint or concurring negligence of Western Gas and AGS. Though the agreement and the indemnity provision may have been written for the primary benefit of the railroad, the language is plain that the parties are to share "equally" in the responsibility for "any claim or liability ... aris[ing] from the joint or concurring negligence of the parties hereto." The logical result of this contribution provision, equal liability for joint or concurring negligence, is not prohibited either by Louisiana's law of comparative negligence or by public policy. Further, the railroad, which ostensibly supplied the language in question, could have more carefully drafted the agreement to effect its professed intent. We refuse to give an interpretation to the language which it plainly does not have. We therefore hold the industrial track agreement empowers Western Gas to seek contribution from AGS should the facts establish that AGS and Western Gas were jointly or concurrently negligent.
Accordingly, the judgment of the District Court is reversed. The motion for summary judgment filed by AGS is denied, whereas the motion for summary judgment filed by Western Gas is granted.
REVERSED.
NOTES
[1] Mr. Freeman claims that the safety relief valve on tank car GLNX 34123 vented to the atmosphere and that, in his attempt to avoid contact with the liquified petroleum gas emitted from the tank car, he ran into the side of another tank car, thereby injuring his knee.