# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2043
_____

Jack Lieffort

*Plaintiff*

v.

Dakota, Minnesota & Eastern Railroad Company

*Defendant*

------------------------------

Dakota, Minnesota & Eastern Railroad Company

*Third Party Plaintiff - Appellant*

v.

R. J. Corman Railroad Construction

*Third Party Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: November 14, 2012
Filed: January 7, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After Jack Lieffort fell and injured his leg and hip while working as the employee-in-charge of a construction site, he sued his employer, the Dakota, Minnesota and Eastern Railroad Company (DM&E), under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60. DM&E then brought a third-party complaint against R.J. Corman Railroad Construction (Corman), contending Corman was required to indemnify and defend it against Lieffort's FELA claim pursuant to a contract between the parties. The district court[1] granted summary judgment in favor of Corman, and we affirm.

I.

DM&E is a railroad company that maintains an interstate railroad system, and Corman replaces and installs railroad tracks. In 2007, DM&E and Corman entered into a Contractor Work Agreement (CWA) for the installation of new rail on DM&E's property in Iowa. The terms of the CWA included an indemnification clause, providing:

Contractor [Corman] agrees to defend, save harmless and indemnify the Railroad [DM&E], its officers, directors, shareholders, agents, employees, successors and assigns from any loss, cost or damage by reason of Personal Injury or property damage of whatsoever nature or

_____

[1]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

kind arising out of, or as a result of, the negligent performance of the Work by the Contractors, its employees, agents, or subcontractors.

Additionally, the CWA required Corman to provide liability and automobile liability insurance with specific policy limits and name DM&E as an additional insured under the policy. As a result, Corman purchased an insurance policy through Lexington Insurance that named DM&E as an additional insured. The Lexington Insurance policy met the financial requirements in the CWA, but Corman kept a $250,000 self-insured retention, meaning that Lexington had no duty to defend until Corman first spent $250,000 of its own funds. The Lexington Insurance policy did not apply to the following:

> (1) "Bodily injury" to an "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of the insured's business; or
> (2) Any claim or "suit" brought by the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

There was an exception to this general exclusion for damages "[a]ssumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." An insured contract was defined as any part of a "contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

Jack Lieffort was a DM&E employee and the employee-in-charge of the Corman construction project. In this role, Lieffort primarily monitored train movement to prevent trains from traveling towards the areas where Corman was

working to install rail lines. On May 16, 2007, Lieffort began putting out tie fires[2] to assist Corman employees. Unprompted, Lieffort grabbed several bottles of water and poured the water on a tie fire. As Lieffort was walking back to his truck, he tripped and fell to the ground, injuring his left leg and hip. Lieffort is not sure what he tripped over or where he landed. During his deposition, Lieffort first maintained that he tripped over a piece of rail, but later admitted that it was more likely that he tripped while stepping backwards.

In April 2010, Lieffort sued DM&E and alleged DM&E was negligent in violation of the FELA. Lieffort's complaint did not assert any claim against Corman.[3] DM&E sought defense and indemnification from Corman and Lexington Insurance, but both refused to defend the claim. Subsequently, DM&E filed a third-party complaint against Corman, alleging that Corman was required to indemnify and defend DM&E under the CWA and seeking a judgment for defense costs and reimbursement for any damages awarded to Lieffort.

Corman and DM&E moved for summary judgment, but Lieffort settled his claim against DM&E while the parties' motions for summary judgment were pending in the district court. The district court granted summary judgment in favor of Corman, concluding that (1) DM&E was not entitled to indemnification under the CWA because it could not establish that Corman was negligent, and (2) Lieffort's claims against DM&E fell outside of the Lexington Insurance policy. DM&E now appeals.

---

[2]Installing railroad ties commonly causes tie fires because of the extreme heat required to bend the metal rails before they are laid.

[3]During his deposition, when Lieffort was asked if Corman had done anything wrong, he replied: "Didn't have enough fire fighting equipment there for one thing." After he was asked if Corman did anything else, Lieffort said that excess material could have been stored or piled where employees were not working.

II.

On appeal, DM&E argues (1) that the indemnity provision contained in the CWA extends to Lieffort's FELA claim and (2) that, alternatively, Lieffort's claim is covered by the Lexington Insurance policy. We review de novo a district court's grant of summary judgment. Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). Reviewing "the record in the light most favorable to the nonmoving party," id., we will affirm the grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

A.

First, DM&E contends that indemnity provisions in railroad contracts implicitly include FELA negligence claims, in addition to ordinary negligence.[4] Under the FELA, railroad employees have a federal cause of action for injuries "resulting in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. In crafting this remedy, "Congress removed various common-law obstacles to an employee's recovery, and courts have liberally construed FELA to further Congress's remedial goal." Cowden v. BNSF Ry. Co., 690 F.3d 884, 889-90 (8th Cir. 2012) (internal citation, alteration marks, and quotation marks omitted). According to DM&E, even if Corman was not negligent under common-law negligence principles, it is liable under the broader liability imposed by the FELA.

---

[4]Corman contends that DM&E did not raise the issue that FELA claims are implied in railroad contracts in the district court. However, DM&E argued in its brief supporting its motion for summary judgment that a FELA claim is a form of negligence and, therefore, is covered under the terms of the indemnity provision of the CWA, and the district court addressed this issue.

DM&E primarily relies on this Court's holding "that an industry's obligation to indemnify a railroad under an industrial track agreement is a contractual duty and not a duty arising under the common law of tort." Burlington N., Inc. v. Hughes Bros., Inc., 671 F.2d 279, 284 (8th Cir. 1982); see also Burlington N., Inc. v. Bellaire Corp., 921 F.2d 760, 763 (8th Cir. 1990) (same). The indemnification clause in Hughes Brothers stated that the railroad company would be indemnified for "loss, damage, or injury from any act or omission of" Hughes Brothers, whose plant was served by Burlington Northern's railroad. 671 F.2d at 283. The court found that "[t]he obvious purpose of the agreement is to provide for indemnification of the railroad when the industry's act or omission violates the railroad's nondelegable duty to furnish a safe place for its employees to work." Id. at 284. The court reasoned that the contract was made in contemplation of FELA liability, and thus the phrase "act or omission" in the disputed indemnification clause "include[d] any act or omission which constitutes a violation of the railroad's duty to provide a safe work place and thus subjects it to liability under the act." Id.

The Eleventh Circuit has distinguished Hughes Brothers, concluding that the agreement in Hughes Brothers included FELA claims because the indemnification clause extended to "liab[ility] for *any* actions or omissions . . . ." See S. Ry. Co. v. Ga. Kraft Co., 823 F.2d 478, 481 n.4 (11th Cir. 1987). In contrast, the court in Georgia Kraft held that the agreement, which extended to "'any and all damage resulting from negligence of' Georgia Kraft," id. at 479, contemplated common-law negligence because "the indemnity agreement clearly says 'negligence' of Georgia Kraft," id. at 482. Therefore, "no language indicat[ed] any ground for liability other than common-law negligence." Id.

We conclude the same is true in this case: nothing in the CWA agreement indicates that it extends to claims which are unrelated to Corman's common-law negligence. The indemnity clause in the CWA does not mention the FELA. It states that it covers all claims "arising out of, or as a result of, the negligent performance"

of Corman.  Therefore, it is more similar to the provision in <u>Georgia Kraft</u> than the broader provisions contained in <u>Bellaire</u> and <u>Hughes Brothers</u>.  In those cases, the indemnity agreements covered damages resulting from "any act or omission." <u>Hughes Bros.</u>, 671 F.2d at 283; <u>Bellaire</u>, 921 F.2d at 762.  Here, similar to the indemnity provision in <u>Georgia Kraft</u>, the indemnity clause is explicitly tied to Corman's negligence; thus, without proof of any negligence by Corman, Lieffort's damages are not covered by the indemnity clause in the CWA.  DM&E asserts that the "of whatsoever nature or kind" language in the indemnity clause is broad enough include FELA liability.  "Of whatsoever nature or kind," however, refers to the *injury* suffered, not the *act* committed.  The language discussing the act is "negligent performance," and because there is no proof of negligence, the indemnification clause is not triggered.

DM&E argues that the settlement agreement proved Corman's negligence, citing Missouri Pacific Railroad Co. v. International Paper Co., 618 F.2d 492 (8th Cir. 1980).  There, the court held that "the settlement of the FELA claim conclusively resolved the issue of liability, absent fraud or collusion." Id. at 495.  The court's holding, however, was based on the terms of an indemnity agreement which tied the obligation to indemnify the railroad to the railroad's FELA liability.  <u>See</u> <u>id.</u> at 496 ("In other words, IPC is liable to the Railroad under the indemnity agreement if IPC's conduct made the Railroad liable to Roach under FELA.").  Further, the indemnity agreement in <u>International Paper</u> contained the same broad language as the contracts in <u>Bellaire</u> and <u>Hughes Brothers</u>, agreeing to indemnify against loss or injury from "any act or omission" of the indemnitor or its employees.  <u>Id.</u> (internal emphasis omitted).  Even if the settlement between Lieffort and DM&E established DM&E's FELA liability, DM&E has presented no evidence that Corman acted negligently, and the indemnification agreement between DM&E and Corman only extends to damages caused by the negligent conduct of Corman.  Therefore, the settlement between Lieffort and DM&E did not conclusively establish Corman's obligation to defend and indemnify DM&E under the CWA's indemnification clause.

Further, in the district court, DM&E agreed that Corman was not negligent. In DM&E's brief in support of its motion for summary judgment, it stated, "Corman's refusal of DM&E's tender of defense in this case is based on the argument that there was no negligence (*DM&E agrees with this*), and therefore there is no duty under the indemnification clause on the part of Corman." (emphasis added). Aside from the settlement, the only evidence offered to establish Corman's negligence is Lieffort's statement during his deposition that Corman should have had more fire-fighting equipment on site. Lieffort's deposition does not establish that Corman was negligent, or that the workplace was unsafe. In his deposition, Lieffort acknowledges that he does not know what he tripped on and admits that he was backing up when he tripped. Further, Lieffort had no duty to assist in putting out the tie fires, nor was he asked to aid in that effort. DM&E has not shown any issues of material fact exist, and, therefore, we conclude as a matter of law that no negligence can be attributed to Corman.

B.

Second, DM&E argues that even if Lieffort's claim is not covered under the indemnity provision in the CWA, it is still covered under the Lexington Insurance policy.[5] The policy states it does not cover "bodily injury to an employee of the insured arising out of the course of . . . employment by the insured." DM&E concedes this general exclusion provision in the policy applies, but contends that the

---

[5]DM&E also argues that if Lieffort's claim is not covered, then it is a breach of the terms of the CWA agreement, which required Corman to procure insurance, because Corman self-insured a portion of the Lexington Insurance policy. DM&E did not directly raise this argument in its briefing before the district court or raise a cause of action for breach of contract in its third-party complaint. Indeed, the district court noted that the argument that self-insurance may constitute a breach of the CWA was *not* made; therefore, because DM&E never raised this argument, we do not address it. See Aaron v. Target Corp., 357 F.3d 768, 779 (8th Cir. 2004) ("Arguments and issues raised for the first time on appeal are generally not considered . . . .").

policy still extends to Lieffort's claim under a separate exception to the general exclusion. The exception DM&E relies upon relates to an "insured contract," which covers "the tort liability of another party." According to DM&E, the indemnification agreement in the CWA is an insured contract, within the meaning of the Lexington Insurance policy, because Corman agrees to indemnify DM&E for DM&E's own FELA negligence.

Under South Dakota law,[6] to relieve a party of its own negligence, "the language of the agreement must be clear and unequivocal." Bell v. E. River Elec. Power Coop. Inc., 535 N.W.2d 750, 753 (S.D. 1995) (internal quotation marks omitted). To establish the existence of an insured contract under the terms of the Lexington Insurance policy, there must be an obligation to indemnify a party against its own negligence. The indemnification provision which DM&E contends is the basis for the insured contract does not indicate that Corman is liable for DM&E's negligence, or the negligence of DM&E's employees. Rather, the indemnification provision only extends to claims based upon Corman's negligent conduct. Therefore, the indemnification provision in the CWA does not trigger the insured contract exception to the general exclusion provision contained in the Lexington Insurance policy, and, as a result, no obligation exists based on the terms of the policy.[7]

---

[6]The parties agree that South Dakota law applies to this case based on the choice-of-law clause in the CWA.

[7]DM&E argues that Corman's self-insured retention agreement with Lexington makes Corman an insurer for DM&E. For DM&E to prevail on this argument, we must find that Lieffort's claim is covered under the Lexington Insurance policy. Thus, this argument similarly fails because we conclude Lieffort's claim is not covered under the policy.

III.

We affirm the ruling of the district court granting summary judgment in favor of Corman.

_____